60 Cal.Rptr.3d 657 (2007)
151 Cal.App.4th 1249
Gil N. MILEIKOWSKY, Plaintiff and Appellant,
v.
WEST HILLS HOSPITAL MEDICAL CENTER et al., Defendants and Respondents.
No. B186238.
Court of Appeal of California, Second District, Division Eight.
June 8, 2007.
*658 Spiegel Liao & Kagay, Charles M. Kagay, San Francisco; Law Offices of Paul M. Hittelman and Paul Hittelman, Los Angeles, for Plaintiff and Appellant.
Fenigstein & Kaufman, Ron S. Kaufman and Nina B. Ries, Los Angeles, for Defendants and Respondents.
Certified for Partial Publication.[*]
FLIER, J.
On August 19, 2003, the governing board of respondent West Hills Hospital and Medical Center (Hospital) upheld the dismissal, by the hearing officer, of appellant Gil N. Mileikowsky's challenge to the Hospital's decision to deny appellant staff privileges. The dismissal was based on the fact that appellant declined to furnish documents relating to proceedings involving appellant at Cedars-Sinai Medical Center (not a party hereto). On August 19, 2004, appellant filed a petition for a writ of mandate that challenged the governing board's decision. The trial court denied the petition. We reverse with directions.

FACTS

1. Appellant Requests Hospital Privileges, Which Are Denied; the Convocation by Hospital, at Appellant's Request, of an Administrative Peer Review Process
Appellant is a physician and surgeon licensed to practice medicine in California; *659 he is board certified in obstetrics and gynecology with a subspecialty in infertility. On May 18, 2001, he applied for reappointment to the Hospital's medical staff. At the time of this application, he had courtesy gynecology privileges at the Hospital; a courtesy privilege is given to physicians who use the Hospital only infrequently. Technically, his application was for an extension of his gynecology privileges for the 2001-2003 term, and for additional obstetrical privileges for the same term.
The president of the Hospital's staff informed appellant by way of a letter dated April 24, 2002, that the Medical Executive Committee denied appellant's application for gynecological and obstetrical privileges. The letter gave several reasons. First, the letter stated that appellant had failed to notify the Hospital that appellant's privileges at Century City Hospital had been terminated on November 7, 2000. Next, while appellant's application stated that he had voluntarily resigned from the Encino-Tarzana Medical Center, documentation showed that he had been summarily suspended on November 16, 2000. The letter also detailed an incident in respondent Hospital when a patient specifically requested that appellant not be allowed to see her, yet appellant insisted on seeing her, and claimed he had obstetrical privileges at the Hospital when that was not the case. The letter stated that this incident did not meet the Hospital's professional and ethical standards. Appellant notified the Hospital that he appealed this decision.
Pursuant to its bylaws, the Hospital appointed a "Judicial Review Committee" (JRC) and a hearing officer, attorney John D. Harwell. Under the bylaws, the hearing officer is to preside over the hearings held by the JRC and "shall not act as a prosecuting officer or advocate, and shall not be entitled to vote." The bylaws provide that the hearing officer may not be legal counsel to the Hospital or the medical staff and "shall gain no direct financial benefit from the outcome."
On June 17, 2002, Harwell wrote to appellant and to the president of the Hospital's medical staff a letter in which he stated that he had been appointed as the hearing officer. The letter stated that Harwell was "a hearing officer in another matter involving [appellant]," that Harwell had reviewed the charges against appellant made by the Hospital and that he found "no overlap of charges, incidents, facts or other circumstances with the other matter in which I [Harwell] am involved." The other matter in which Harwell was a hearing officer were proceedings involving appellant and Century City Hospital.
Appellant chose to represent himself in the JRC proceedings. On July 1, 2002, a hearing was convened by the JRC which was opened by Harwell's statement that "[t]his is the first voir dire" in the matter of appellant's appeal from the decision denying him hospital privileges. Appellant then proceeded to question Harwell; the transcript of appellant's examination of Harwell is approximately 50 pages long. The thrust of appellant's questioning was to demonstrate that Harwell could not serve as a fair, unbiased hearing officer.

2. Appellant's Failure To Produce the Cedars-Sinai Documents; the Hearing Officer's Order Terminating the Hearing; Hospital's Approval of the Hearing Officer's Decision
On July 16, 2002, Harwell wrote appellant and the president of Hospital's staff, stating that the exchange of documents should be completed between then and Labor Day. No mention was made of documents involving appellant and Cedars-Sinai Medical Center.
*660 On July 17, 2002, Hospital's counsel, attorney James R. Lahana, wrote appellant stating, among things, that: "Further, please be advised that the Medical Staff still has not received copies of the Notice of Charges, findings of the Hearing Committee and transcripts and exhibits concerning the summary action which was taken against you at Cedars-Sinai Medical Center despite prior requests for such information. Previously, you refused to provide copies claiming that the attorney from Cedars-Sinai Medical Center did not authorize you to release those documents even though you are no longer a member of that staff. As a result of your refusal to provide the requested information, your application for reappointment remains incomplete. Please be aware your continued failure to provide these materials by July 28, 2002 will result in the Medical Staff amending its Notice of Charges to include allegations concerning your failure to cooperate, as well as including a reference to the Cedars-Sinai Medical Center suspension based upon the limited information contained in the Business and Profession Code Section 805 report and National Practitioner Data Bank report submitted by Cedars-Sinai Medical Center." The Cedars-Sinai documents requested by Hospital are referred to hereafter collectively as the "Cedars-Sinai documents."
In a letter dated July 29, 2002, addressed to the president of Hospital's staff, appellant wrote that he would be "able to respond" by August 5, 2002. Appellant, however, did not respond. On August 21, 2002, Hospital amended the Notice of Charges to include appellant's failure to furnish the Cedars-Sinai documents. This amendment also added as an additional charge that appellant's privileges were first suspended and then revoked by Cedars-Sinai.[1]
On September 3, 2002, appellant wrote hearing officer Harwell, stating that he would "not be able to respond to the latest correspondence from West-Hills till 9-10." On October 3, 2002, the Hospital wrote Harwell that appellant had not furnished the Cedars-Sinai documents. On November 27, 2002, the Hospital again wrote Harwell, stating that the Hospital had attempted to set a hearing on "numerous occasions" but that appellant had not been "responsive to the Medical Staffs efforts at moving this case to [a] conclusion." This letter stated that appellant had not furnished the Cedars-Sinai documents.
On January 12, 2003, appellant wrote the Hospital, with a copy to Harwell, a lengthy letter in which he demanded that his privileges be reinstated and that the proceedings involving his privileges be dismissed. Among other things, this letter stated that, as far as the Cedars-Sinai documents were concerned, appellant had provided the Hospital with "2 [s]igned [Releases authorizing both [h]ospitals to exchange any information they [w]ish a long time ago."
The Hospital responded to this by a letter dated January 14, 2003, addressed to Harwell, which stated that appellant "ignores the fact that he or his counsel have in their possession the very documents being sought and that the burden is on [appellant] to produce that information, not upon Cedars." This letter requested that appellant's "appeal be dismissed based upon his willful disregard of the July 29, 2002 order and his failure to produce the required documentation."
*661 By a letter February 5, 2003, Harwell handed down a ruling on the Hospital's request for terminating sanctions, as well as on number of matters that are not material to this appeal.
The section of the February 5, 2003 letter that addressed the Hospital's request for terminating sanctions noted that appellant had refused to provide the Cedars-Sinai documents to the Hospital "apparently on the basis that the counsel for Cedars-Sinai has instructed [appellant] not to reveal these documents and further [appellant] directs the [Hospital] to obtain the documents from Cedars-Sinai directly." The letter states that appellant's response was not "adequate." The reason for this, according to the letter, is that the Hospital's bylaws and Business and Professions Code section 809.2, subdivision (d)[2] "oblige [appellant] to make available for inspection and copying all documents relevant to the Notice of Charges." The letter goes on to note that the Cedars-Sinai documents are "clearly relevant" to the Notice of Charges.
The February 5, 2003 letter then proceeded to discuss the law relating to terminating sanctions issued for an abuse of the discovery process under the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.). The letter does not cite any authorities that empower a hearing officer in a peer review proceeding[3] to terminate the hearing because one of the parties to the proceeding has failed to produce documents demanded by the other party. The letter concludes by stating that appellant's "refusal has been wilful [sic], in that it is deliberate and intentional, even if taken in error." The letter ordered appellant to produce the Cedars-Sinai documents and stated that if the documents were not produced, "terminating sanctions will be imposed."
Appellant did not produce the documents, but requested until March 14, 2003, to respond. That date came and went; on March 18, 2003, Harwell wrote the parties another letter in which he stated that appellant was required to produce the Cedars-Sinai documents by March 24, 2003, "or terminating sanctions will be ordered." The documents were not produced by appellant.
The next step in the process was a document captioned "BEFORE THE JUDICIAL REVIEW COMMITTEE [¶] WEST HILLS HOSPITAL" and entitled "Order Terminating Hearing for Failure of [appellant] to Comply with Discovery Orders." (Boldface omitted.) This document, dated March 27, 2003, was signed solely by Harwell in his capacity as hearing officer; we will refer to this document as the "terminating order."
The text of the terminating order reviewed the history of the matter, which we have set forth above, and then addressed *662 the powers of the hearing officer. The terminating order notes that section 809.2(d) and section 10.3-2 of article X of Hospital's bylaws require the parties to make available for inspection and copying documents that relate to the pending charges; section 10.3-2 is, in substance, the same as section 809.2(d). (See fn. 2, ante.) The terminating order also notes that section 10.1-7 of article X of the bylaws provides that failure to appear at, and to proceed with, the hearing shall be deemed to constitute voluntary acceptance of the recommendation or action that is the subject of the hearing. The terminating order then examines the power of courts to issue terminating sanctions for discovery abuses and the decision in Webman v. Little Co. of Mary Hospital (1995) 39 Cal.App.4th 592, 46 Cal.Rptr.2d 90 (Webman), which the terminating order states is "eerily similar" to this case. The terminating order concludes that appellant's refusal to produce the Cedars-Sinai documents justified terminating sanctions and that, for this reason, "the request of the Medical Staff to dismiss [appellant's] requested hearing is granted and pursuant to the Bylaws, Section 10.1-7, `to constitute voluntary acceptance of the recommendations or actions involved, which shall become effective immediately.'"
Appellant appealed this decision to the Hospital's "Governing Board," which appointed a committee to hear the matter.[4] Among other contentions, appellant contended in this appeal that the hearing officer did not have the power to terminate the hearing. The Governing Board disagreed, specifically finding that appellant was afforded a fair hearing procedure and that the decision of the hearing officer "in dismissing the appeal of [appellant], was reasonable and warranted, supported by the weight of the evidence, and the Committee of the Governing Board recommended that it be accepted in its entirety. [¶] ... Accordingly, the adoption of the decision of the Hearing Officer appointed to the Medical Review Committee is the final action of the Governing Board." This final decision is dated August 19, 2003.[5]

3. The Trial Court's Reasons for Finding That the Hearing Officer Was Empowered To Terminate the Hearing
The trial court rejected appellant's contention that the hearing officer was not empowered to issue an order terminating the hearing, as a sanction for appellant's failure to produce the Cedars-Sinai documents. The trial court gave four reasons for this.
First, the trial court found that the hearing officer's decision was authorized by section 809.2(d), and section 10.3-2c of the bylaws, which provide that the hearing officer "shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires." The trial court concluded that this provision empowered the hearing officer to terminate the hearing as a sanction for appellant's failure to produce the Cedars-Sinai documents.
Second, the trial court found that appellant's failure to produce the documents in question prevented the JRC from properly performing its function of evaluating appellant's fitness to practice medicine.
Third, the court referred to the fact that appellant himself had demanded terminating *663 sanctions because the Hospital refused to turn over documents demanded by appellant.
Fourth, the interests of justice warranted the termination of the hearing, because the termination of the hearing ensured that appellant would not benefit from his refusal to furnish the Cedars-Sinai documents.

DISCUSSION

1. The Hearing Officer Was Not Empowered To Terminate the Hearing Prematurely
We begin with the fact that the Legislature decreed that California should "design its own peer review system" (§ 809, subd. (a)(2)), and that the Legislature has done just that in section 809.05 through and including section 809.9. Section 809.2, captioned "[h]earing concerning final proposed action by peer review body; procedures; voir dire; inspection of documents; decision, witnesses; continuances; commencement," is of particular significance to this appeal.
Before turning to section 809.2, it is important to understand the context in which section 809.2 operates.
Section 809.1, subdivision (a) provides that a "licentiate who is the subject of a final proposed action of a peer review body for which a report is required to be filed under Section 805 shall be entitled to written notice as set forth in subdivisions (b) and (c). For the purposes of this section, the `final proposed action' shall be the final decision or recommendation of the peer review body after informal investigatory activity or prehearing meetings, if any." In this case, a section 805 report was required because appellant's application for staff privileges or membership was "denied or rejected [or terminated or revoked] for a medical disciplinary cause or reason." (§ 805, subd. (b)(1) & (2).) Once the licentiate has been notified of the "final proposed action," the licentiate may request a hearing on the final proposed action. (§ 805, subd. (b)(3).) Appellant made such a request in this case.
The hearing that ensues is governed by section 809.2, which is reasonably detailed in setting forth the requirements of a hearing. Subdivision (a) sets forth who is the "trier of fact" in a hearing held under section 809.2.[6] A decision regarding the final proposed action of the peer review body is made by the trier of fact, as that agency is defined in subdivision (a) of section 805. (See fn. 6, ante.)
Section 809.2 specifically provides for a hearing officer. Subdivision (b) of section 809.2 states: "If a hearing officer is selected to preside at a hearing held before a panel, the hearing officer shall gain no direct financial benefit from the outcome, shall not act as a prosecuting officer or advocate, and shall not be entitled to vote." The provision that the hearing officer is not entitled to vote refers necessarily to a vote on the merits, i.e., whether the final proposed action should be affirmed or vacated. Given that the composition of the trier of fact is weighted toward ensuring that medical specialists review the final proposed action, it makes sense to exclude the hearing officer, whose functions and expertise should center on the conduct of *664 the hearing, from that decision. There is the further consideration that it would make no sense to deprive the hearing officer of the right to "vote" on procedural decisions, since this is the area of the hearing officer's expertise and role in the hearing. The most sensible construction is that the reference to a "vote" is a reference to the deliberations of the trier of fact, which is a body composed of several members who cast votes to produce the decision of that body.
Section 809.3, subdivision (a) sets forth the procedural rights of the parties in a hearing that is convened under section 809.2.[7] In the context of this case, we define a "premature termination" to be one when either one of the parties has not been afforded the opportunity to exercise the rights set forth in section 809.3, subdivision (a). There is no question that this case qualifies as one when the hearing was prematurely terminated, in that no hearing ever took place when appellant could avail himself of the rights set forth in section 809.3, subdivision (a), particularly the rights set forth in subdivision (a)(3), (4) and (5). (See fn. 7, ante.)
The decision to prematurely terminate a hearing convened under the authority of section 809.2 is a decision that lets stand the final proposed action of the peer review body that, in the first place, was the cause of the request for a hearing. Since the sole object of a hearing held pursuant to section 809.2 is to reverse, or affirm, the final proposed action, the decision to terminate the hearing with the effect of letting the final proposed action stand is therefore clearly a decision on the merits. This result is confirmed by the terminating order of the hearing officer in this case which expressly confirmed that appellant was deemed to have accepted the Hospital's action (the final proposed action), "`which shall become effective immediately.'"
A decision on the merits, however, is consigned to the trier of fact as that body is defined in subdivision (a) of section 809.2; subdivision (b) expressly denies the hearing officer the right to vote on the merits. Therefore, in this case, the hearing officer's decision to prematurely terminate the hearing ran afoul of the fundamental provision of section 809.2 that the hearing officer is not empowered to make a decision regarding the final proposed action of the peer review body.
The Hospital's governing board adopted as its own the hearing officer's decision to prematurely terminate the hearing. There is no provision in section 809.2, however, or any of its companion sections, that empowers anyone, including the trier of fact and the body that hears an appeal from the decision of the trier of fact, to prematurely terminate a hearing convened under section 809.2 before a party has been accorded an opportunity to exercise the rights set forth in subdivision (a) of section 809.3. (See fn. 7, ante.)
The hearing officer drew on jurisprudence dealing with terminating sanctions under the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) in concluding that, as a hearing officer, he was empowered *665 to issue terminating sanctions. There are three reasons why this conclusion is erroneous.
First, the right to inspect and copy documentary information that is granted to the parties by section 809.2(d) (see fn. 2, ante ) is not to be confused with discovery under the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.). The Civil Discovery Act applies to a pending "action,"[8] which is defined as a "civil action" and a "special proceeding of a civil nature."[9] (See generally 1 Hogan & Weber, Cal. Civil Discovery (LexisNexis 2005) § 1.6, pp. 1-10 to 1-14.) While the statute does not define a special proceeding of a civil nature (id. at p. 1-10), it has been held that this language refers to a proceeding in a court of law. (McRae v. Superior Court (1963) 221 Cal.App.2d 166, 170, 34 Cal.Rptr. 346.) Other than in civil actions, the Civil Discovery Act applies to judicial arbitration, to contractual arbitration to a limited extent, to administrative proceedings involving state agencies,[10] in State Bar disciplinary proceedings and to sexually violent predator civil commitment proceedings. (1 Hogan & Weber, Cal. Civil Discovery, supra, § 1.6, pp. 1-10 to 1-14; 2 Witkin, Cal. Evidence (4th ed. 2000) Discovery, § 6, p. 860.)[11] The right to inspect and copy documentary information under the provisions of section 809.2(d) is not subject to the Civil Discovery Act.
Second, terminating sanctions under the Civil Discovery Act are a creature of statute. The general authority for terminating sanctions under the Civil Discovery Act is subdivision (d) of Code of Civil Procedure section 2023.030; terminating sanctions in specific settings are also specifically governed by statutory law.[12] Apart from the authority granted under these statutes to terminate a civil action or a special proceeding of a civil nature, there is no power to terminate either a civil action or a special proceeding of a civil nature as a discovery sanction. There is no statute that grants a hearing officer named under section 809.2, subdivision (b), or the trier of fact as defined in section 809.2, subdivision (a), the power to prematurely terminate a hearing as a sanction for failure to make documents available to the other party. Apart from statute, there is no "common law" that authorizes terminating *666 sanctions for the failure of a party to comply with section 809.2(d).
Third, section 809.2 specifically addresses the consequence of a failure to provide information requested under section 809.2(d).[13] The only procedural consequence of failure to provide information requested under section 809.2(d) is that it "shall constitute good cause for a continuance." While, as we point out below, the failure to provide requested documentation may have also substantive consequences, the only procedural sanction allowed by the statute is a continuance of the hearing. There is no authority to add to this provision a further power to terminate a hearing prematurely for failure to produce requested documentation.
The trial court found that the hearing officer's decision was authorized by section 809.2(d), and section 10.3-2c of the bylaws, which provide that the hearing officer "shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires." The trial court's conclusion does not take into account the context of the hearing officer's empowerment to "safeguard" the process. In relevant part, section 809.2(d) provides: "The right to inspect and copy by either party does not extend to confidential information referring solely to individually identifiable licentiates, other than the licentiate under review. The arbitrator or presiding officer shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires." The word "safeguards" refers to the problem raised by the sentence that precedes this word, which is "confidential information referring solely to individually identifiable licentiates, other than the licentiate under review." It is this right of persons who are not parties to the hearingconfidential information referring to other licentiatesthat the arbitrator or presiding officer is empowered to "safeguard." We do not agree that the provision that empowers the arbitrator or presiding officer to "impose any safeguards [that] the protection of the peer review process and justice requires" is authority to terminate the hearing prematurely, especially since: (1) such power is conferred only and expressly by statute and (2) there is no such statute when it comes to a hearing held pursuant to section 809.2.
The hearing officer concluded that Webman, supra, 39 Cal.App.4th 592, 46 Cal. Rptr.2d 90 authorizes the premature termination of the hearing process under section 809.2 or, in the hearing officer's terms, the termination of the hearing for appellant's failure to comply with discovery orders. We do not agree.
In Webman, the physician was denied reappointment to the medical staff of Little Company of Mary Hospital (LCMH) on *667 the ground that he refused to furnish documentation requested by LCMH that addressed proceedings adverse to the physician, Dr. Webman, that had taken place at Memorial Hospital of Gardena (Memorial Hospital). After protracted proceedings that we need not summarize, during which Dr. Webman had ample opportunity to, but did not, furnish the requested documentation from Memorial Hospital, first a subcommittee, and then the committee of LCMH's medical staff concluded that Dr. Webman should not be reappointed because he had failed to cooperate with the reappointment process. The medical executive committee accepted this recommendation, denied reappointment, and notified Dr. Webman of his right to have the JRC consider the matter. (Webman, supra, 39 Cal.App.4th 592, 598, 46 Cal.Rptr.2d 90.)
Dr. Webman requested a hearing before the JRC. The charge against him was that he had failed to produce information "`for a proper evaluation'" and prevented the Department of Medicine from "`fully reviewing [his] professional competence.'" (Webman, supra, 39 Cal.App.4th at p. 598, 46 Cal.Rptr.2d 90.) The court in Webman summarized the ensuing events: "The judicial review committee hearing took place on March 10, 1993. After considering the documentary and testimonial evidence that was presented, the judicial review committee concluded the medical executive committee's recommendation `was reasonable and warranted.' Dissatisfied with the outcome, appellant thereafter sought review from the appellate review committee of the governing board of LCMH. When that body affirmed the judicial review committee's decision on July 20, 1993, appellant petitioned the superior court for relief." (Id. at p. 599, 46 Cal.Rptr.2d 90.)
The first distinction between this case and Webman is that in Webman a hearing before the JRC did take place, while in this case there was no hearing, other than the voir dire. The second distinction is that in Webman the decision on the merits was made before the trier of fact, as that term is defined in section 809.2, subdivision (a), while in this case the operative decision on the merits was made by the hearing officer. The third distinction is that in this case the final proposed action (denying staff privileges) was allowed to stand because of a "sanction" issued by the hearing officer, while in Webman the decision to deny privileges was made by the trier of fact possessing medical expertise for reasons that are grounded in assuring quality medical care. It is clear that Webman does not authorize a hearing officer to prematurely terminate a hearing that is to be held pursuant to section 809.2.
Webman is authority for the proposition that withholding information needed to complete a hospital's peer review of a physician may be grounds for denying, or revoking, medical staff privileges.[14] Whether this is, or should be, true in appellant's instance is, at this point, not for us to say. Such a decision is consigned to *668 the appropriate medical committee at the Hospital and, in case of an adverse decision and appellant's request for a hearing, to the trier of fact convened under section 809.2.
On appeal, the Hospital contends that the decision in Mileikowsky v. Tenet Healthsystem (2005) 128 Cal.App.4th 531, 27 Cal.Rptr.3d 171 (Tenet Healthsystem) confirms that the hearing officer acted within his authority to impose terminating sanctions. Tenet Healthsystem involves the same appellant who is before us in this case.
Tenet Healthsystem involved the termination of appellant's staff privileges at Encino-Tarzana Regional Medical Center. After a very contentious and difficult beginning,[15] the hearing that was convened under the authority of section 809.2 commenced in January 2001. Voir dire and procedural matters took up seven sessions that extended over the next eight months; "actual substantive matters were not addressed until August 16, 2001, when opening statements were made. Over the course of the next 16 sessions which took place between August and December 2001, the Hospital called witnesses to testify in support of the charges." (Tenet Healthsystem, supra, 128 Cal.App.4th at p. 546, 27 Cal.Rptr.3d 171.)
The course of these hearing sessions was tumultuous, and is set forth in detail in Tenet Healthsystem, supra, 128 Cal. App.4th at pages 540-548, 27 Cal.Rptr.3d 171. The essence of the matter was captured in the hearing officer's rulings in December 2001 and January 2002 in which he attempted to impose some controls on appellant's conduct; we set forth these rulings in the margin.[16] The hearings officer's efforts to bring appellant under control failed, however, in that appellant stated in writing that he would not abide by the hearing officer's rulings of January 3, 2002. "On March 30, 2002, the hearing officer issued a ruling formally terminating the hearing sessions, stating that `[t]he intentional acts of misconduct by Dr. Mileikowsky have so prejudiced *669 the hearing that it is impossible to complete it consistent with the requirements of fair procedure and due process imposed by California law" and that `Dr. Mileikowsky's repeated acts of misconduct at this hearing have created a situation where he has waived his right to the completion of this hearing and thereby has failed to exhaust his administrative remedies.'" (Id. at p. 550, 27 Cal.Rptr.3d 171.) The hearing officer gave no less than seven distinct reasons for terminating the hearing, one of which was appellant's failure to produce the documents that in this case we have identified as the Cedars-Sinai documents. The other reasons dealt with appellant's unacceptable and abusive conduct during the hearing sessions. (Id. at pp. 550-552, 27 Cal.Rptr.3d 171.)
It is, of course, evident that the termination of the hearing in Tenet Healthsystem was a far different matter from the termination of the hearing in the case before us. First, in Tenet Healthsystem multiple sessions of the hearing actually took place over the span of nearly one year. In Tenet Healthsystem, appellant had full and complete opportunities to avail himself of the rights set forth subdivision (a)(3), (4) and (5) of section 809.3 (see fn. 7, p. 664, ante0, and did avail himself of these rights. In the case before us, however, the only session that took place in this case was the voir dire of the hearing officer and the panel that composed the trier of fact; there was no opportunity to exercise the rights set forth in section 809.2, subdivision (a). Second, the hearing was terminated in Tenet Healthsystem in large part because appellant made it literally impossible for the hearing to proceed in anything like an orderly and civil fashion. In this case, the hearing was prematurely terminated as a "discovery sanction." While appellant's record, as he made it in Tenet Healthsystem, would give anyone pause who was contemplating embarking on a hearing with appellant, the fact is that, until he forfeited them, appellant had the rights in the instant proceedings that are enumerated in section 809.3(a).
We are in full agreement with the court in Tenet Healthsystem that a party may well forfeit by its conduct the rights set forth in section 809.3(a). "In order to ensure that the hearings mandated by the Business and Professions Code proceed in an orderly fashion, hearing officers must have the power to control the parties and prevent deliberately disruptive and delaying tactics." (Tenet Healthsystem, supra, 128 Cal.App.4th at p. 561, 27 Cal.Rptr.3d 171.) While cases such as Tenet Healthsystem are undoubtedly rare, and while the decision to terminate a hearing should be made as cautiously as in Tenet Healthsystem and only for conduct that is egregious such as the conduct in that case, it cannot be doubted that the integrity of the system of peer review requires that the trier of fact can terminate, upon a proper showing, the hearing convened pursuant to section 809.2 before a decision on the merits.
We respectfully part company with the court in Tenet Healthsystem on the question whether the hearing officer, acting on his or her own authority, can terminate a hearing that has been requested, and convened, under sections 809.1 and 809.2. In substance, the court in Tenet Healthsystem found that the authority of the hearing officer to terminate a hearing can be implied from various provisions of section 809.2, the bylaws of the hospital involved in that case, and from the principle that, as a general matter, a hearing officer has wide latitude in conducting a hearing. (Tenet Healthsystem, supra, 128 Cal.App.4th at pp. 557-561, 27 Cal.Rptr.3d 171.) The court noted *670 that there is no express provision in the statutes that permits a hearing officer to terminate a hearing based on a party's conduct in disobeying the hearing officer's orders or for engaging in disruptive behavior. (Id. at p. 559, 27 Cal.Rptr.3d 171.)
The court in Tenet Healthsystem did not take account of the provision of subdivision (b) of section 809.2 that states that the hearing officer "shall not be entitled to vote." As we have explained (see text, p. 663, ante), this is a legislative judgment that the hearing officer should not participate in a decision on the merits, i.e., whether the final proposed action of the peer review body should be affirmed or set aside. Yet, terminating the hearing prior to its conclusion by a decision of the trier of fact has the operative effect of allowing the final proposed action to stand. It is notable that allowing the hearing officer to prematurely terminate a hearing stands subdivision (b) of section 809.2 on its head since this empowers the hearing officer not only to effectively vote on the merits, it also makes the hearing officer the sole master of that decision. We do not think that this result squares with the express provision of subdivision (b) of section 809.2 that the hearing officer "shall not be entitled to vote."
The specific provision that deprives the hearing officer of a vote on the merits overrides, in our opinion, the view that such a power can or should be implied from other provisions of section 809.2, or from the general powers of a hearing officer. For this reason, we disagree with the Hospital that decisions from other jurisdictions in settings other than in California peer review system, as set forth in section 809 et seq., are relevant or even persuasive. Generalities about the "wide latitude" granted to hearing officers in such other settings must yield to the specific considerations we have examined that are unique to proceedings authorized by section 809.1 et seq.
The court in Tenet Healthsystem expressed the concern that if contested procedural matters generally were delegated to the trier of fact, hearings would become cumbersome and unmanageable, especially for professionals with busy schedules. The court concluded that the decision to terminate the hearing in Tenet Healthsystem was such a procedural decision, and that it would be both unwise and unfair to saddle the trier of fact with such a decision. (Tenet Healthsystem, supra, 128 Cal.App.4th at pp. 561-562, 27 Cal.Rptr.3d 171.)
We agree that, generally, procedural matters should be consigned to the hearing officer; in fact, the hearing officer's function is precisely that. The decision to terminate a hearing before a final decision of the trier of fact on the merits, with the attendant effect of allowing the final proposed action to stand, however, is not merely a procedural decision. It is, effectively, a decision on the merits.
We do not think that it would unduly burden the trier of fact to require it to make the decision to terminate a hearing before a final decision on the merits. For one, such instances can be expected to be as rare as the facts of Tenet Healthsystem. The procedural predicates of such a decision should be consigned to the hearing officer,[17] just as these predicates were carefully executed by the hearing officer in Tenet Healthsystem, reserving only the final decision to terminate to the trier of *671 fact. It is also true that a decision to terminate, under circumstances such as found in Tenet Healthsystem, gains in stature and weight if the final decision is made by the party's peers, and not merely by the hearing officer.

2. Vesting the Trier of Fact, Rather Than the Hearing Officer, with the Power To Prematurely Terminate a Hearing Ensures the Fair Operation of the Peer Review System
The Hospital contends that the (premature) termination of the hearing was warranted because this decision served the interests of the peer review process. Specifically, the Hospital points out that the Cedars-Sinai documents pertain to appellant's "medical competence, which was from the outset an issue in the JRC hearing." The Hospital goes on to state that appellant "is mistaken in suggesting that the Medical Staff and the JRC could do their job of protecting the public through a peer review process that did not include reviewing the Cedars-Sinai Documents."
The Hospital's own arguments demonstrate why the decision to prematurely terminate the hearing should have been made by the trier of fact and not the hearing officer. The Hospital's argument is that peer review could not be performed adequately without the Cedars-Sinai documents. Whether this is actually the case is a matter of medical judgment, requiring the expertise of trained medical professionals. Yet, we do not have before us the judgment of an expert body that, under the circumstances of this case, the Cedars-Sinai documents were essential to the peer review process. While we have plausible arguments propounded by Hospital's lawyers, no group of medical professionals, i.e., the trier of fact, has reached such a consensus and made such a decision.
In this connection, we note that the Hospital's governing board explicitly based its decision on the decision of the hearing officer, finding that the hearing officer's decision to terminate the hearing was reasonable and warranted, and further adopting the decision of the hearing officer as its own decision. The body charged with the responsibility to review the final proposed action, the trier of fact which "shall include ... an individual practicing the same specialty as the licentiate" (§ 809.2, subd. (a)), never had an occasion to consider and decide whether the Cedars-Sinai documents were essential to the peer review process in this case.
This is no mere technicality. "Peer review, fairly conducted, is essential to preserving the highest standards of medical practice." (§ 809, subd. (a)(3).) One cannot speak of "peer review" when, in fact, there has been no such review, and not even a decision by the body empowered to make the decision regarding the final proposed action. The circumstance that the Hospital's governing board approved the hearing officer's decision is no substitute for a full hearing and plenary discussion by the trier of fact of the issue posed by the Cedars-Sinai documents. Thus, the trial court's conclusion that withholding the Cedars-Sinai documents prevented the JRC from performing its function of evaluating appellant's fitness to practice medicine is not based on facts found by the body that is charged with the responsibility of determining this issue in the first instance.
A comparison of the procedure followed in Webman, supra, 39 Cal.App.4th 592, 46 Cal.Rptr.2d 90 to the procedure followed in this case illustrates our point. In Webman, first the medical executive committee and then the JRC, i.e., two bodies possessing medical expertise and experience, came to the conclusion that the materials *672 withheld by Dr. Webman were important, if not crucial, to their evaluation of his competence. Based on this finding, the courts, in the form of the appellate court in Webman, could confidently conclude that withholding information that has been found to be essential to the peer review process warrants, from a legal perspective, upholding the final proposed action of the peer review body.
Unfortunately, the record in the case before us reflects only the decision of a single person, a lawyer by training and profession, that appellant has not complied with "discovery orders" and that, for this reason, "terminating sanctions" were warranted. It does not help the situation that this hearing officer had no authority to issue "discovery orders" under the Civil Discovery Act and/or to award "terminating sanctions."

3. The Right To Inspect and Copy Documents
The right to inspect documents extends to "documentary information" that is relevant to the charges and that the licentiate and the peer review body "has in its possession or under its control." (§ 809.2(d).) Taking into account the nature of the peer review process, and the busy schedules of all of the participants involved in that process, there is no reason to make this document production burdensome for either the licentiate or the peer review body. In fact, there is every reason to make it as minimally burdensome as possible, without compromising the peer review process itself.
It follows therefore that if either the licentiate or the peer review body already have documents in their possession, there is usually no need to request their production from the other party. It also follows that if either party is not in possession of the documents but controls them in the sense of being able to authorize their release by a third party, it is sufficient if the release is authorized, leaving it to the requesting party to inspect and copy the documents in the possession of the third party. The statute provides for the right to "inspect and copy," and does not state that there is a duty to produce the requested documents.
In sum, the right to inspect and copy documents should be exercised in order to ensure a fully informed peer review process, and not to make the process difficult and onerous for the other party.

4. Disqualification of the Hearing Officer[**]

DISPOSITION
The judgment is reversed. The case is remanded with directions to enter a judgment directing the Hospital: (1) to set aside its decision of August 19, 2003; (2) to convene a hearing pursuant to the provisions of subdivision (c) of section 809.1; and (3) to conduct the hearing and further proceedings in accordance with the provisions of section 809.2 et seq., and in conformance with the views expressed in this opinion.
RUBIN, Acting P.J., and BOLAND, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 4 of the DISCUSSION.
[1] The amendment also added charges relating to appellant's alleged failure to cooperate with the application process and allegations that appellant had engaged in disruptive conduct.
[2] Business and Professions Code section 809.2, subdivision (d) provides in relevant part: "The peer review body shall have the right to inspect and copy at the peer review body's expense any documentary information relevant to the charges which the licentiate has in his or her possession or control as soon as practicable after receipt of the peer review body's request. The failure by either party to provide access to this information at least 30 days before the hearing shall constitute good cause for a continuance.... The arbitrator or presiding officer shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires." We will refer to this provision as "section 809.2(d)."

All further references to statutes are to the Business and Professions Code unless otherwise noted.
[3] As we discuss in part 1 of our DISCUSSION, post, peer review proceedings are governed by section 809.05 et seq.
[4] Appellant was represented by counsel at this point and continued to be represented by counsel throughout the ensuing proceedings.
[5] The actual document erroneously gives the year as 2002.
[6] "The hearing shall be held, as determined by the peer review body, before a trier of fact, which shall be an arbitrator or arbitrators selected by a process mutually acceptable to the licentiate and the peer review body, or before a panel of unbiased individuals who shall gain no direct financial benefit from the outcome, who have not acted as an accuser, investigator, factfinder, or initial decision-maker in the same matter, and which shall include, where feasible, an individual practicing the same specialty as the licentiate."
[7] Section 809.3, subdivision (a) provides: "During a hearing concerning a final proposed action for which reporting is required to be filed under Section 80S, both parties shall have all of the following rights: [¶] (1) To be provided with all of the information made available to the trier of fact. [¶] (2) To have a record made of the proceedings, copies of which may be obtained by the licentiate upon payment of any reasonable charges associated with the preparation thereof, [¶] (3) To call, examine, and cross-examine witnesses. [¶] (4) To present and rebut evidence determined by the arbitrator or presiding officer to be relevant. [¶] (5) To submit a written statement at the close of the hearing."
[8] Code of Civil Procedure section 2017.010.
[9] Code of Civil Procedure section 2016.020, subdivision (a).
[10] Discovery in administrative proceedings involving state agencies is governed by Government Code section 11507.5 et seq.
[11] "The procedure may also be invoked in administrative proceedings [citation], in judicial arbitration proceedings [citations], and, to a limited extent, in conventional arbitration proceedings [citations]. (See C.E.B., 1 Civil Discovery Practice 3d, § 2.6 et seq.; on use in eminent domain proceedings, see infra, § 200 et seq.; on use in State Bar disciplinary proceedings, see Brotsky v. State Bar (1962) 57 Cal.2d 287, 301, 19 C[al].R[ptr]. 153, 368 P.2d 697, 1 Cal Evidence (4th), Introduction, § 75; on criminal discovery, see 5 Cal.Crim. Law (3d), Criminal Trial, § 27 et seq.)" (2 Witkin, Cal. Evidence, supra, Discovery, § 6, p. 860.)
[12] "In addition to general authorization in C.C.P. 2023(b)(4), numerous provisions throughout the 1986 Act permit the imposition of terminating sanctions. (See, e.g., C.C.P. 2025(j)(3), 2025(o) [deponent's failure to obey order compelling attendance, testimony, or production of documents]; 2030(k), 2030(l) [failure to obey order compelling response or further response to interrogatories]; 2031(l), 203 l(m), 203 l(n) [failure to obey order compelling response or further response to demands for inspection or order compelling inspection]; 2032(f) [failure to submit to, or to produce another for, physical or mental examination]; 2032(h), 2032(j) [failure to obey order compelling delivery of medical reports].)" (2 Witkin, Cal. Evidence, supra, Discovery, § 257, p. 1079.)
[13] That the production of documentary information under section 809.2(d) is intended to be governed by section 809.2 and not by rules pertaining to civil discovery is also made apparent by subdivision (e) of section 809.2, which lays down the rules and procedures, unique to section 809.2, that are to be followed in determining whether requested documentation is relevant. Subdivision (e) provides: "When ruling upon requests for access to information and determining the relevancy thereof, the arbitrator or presiding officer shall, among other factors, consider the following: [¶] (1) Whether the information sought may be introduced to support or defend the charges. [¶] (2) The exculpatory or inculpatory nature of the information sought, if any. [¶] (3) The burden imposed on the party in possession of the information sought, if access is granted. [¶] (4) Any previous requests for access to information submitted or resisted by the parties to the same proceeding."
[14] "LCMH's actions were entirely reasonable given the facts of this case. To conclude otherwise would permit appellant to prevent LCMH from acting `in the interest of maintaining and enhancing quality patient care' (Bus. & Prof.Code, § 809.05, subd. (d)), by first withholding information LCMH needed to complete its investigation and then withdrawing the authorization LCMH required to gain access to the germane records or acquire knowledge of their contents from the only other logical source, [Memorial Hospital]. Such a result would also fly in the face of this state's policy of protecting the health and welfare of its residents by excluding, through a peer process, `those healing arts practitioners who provide substandard care or who engage in professional misconduct....' (Bus. & Prof.Code, § 809, subd. (a)(6).)" (Webman. supra. 39 Cal.App.4th 592, 602-603, 46 Cal. Rptr.2d 90.)
[15] Appellant's privileges that were the subject of Tenet Healthsystem were initially denied in 1998; this decision was rescinded, but his application for reappointment was denied in January 2000. (Tenet Healthsystem, supra, 128 Cal.App.4th 531, 537-538, 27 Cal.Rptr.3d 171.) The complications before the hearing ever commenced are chronicled by the court at 128 Cal.App.4th at pages 538-546, 27 Cal. Rptr.3d 171, but these events are not germane to our discussion of the Tenet Healthsystem decision.
[16] "On December 24, 2001, the hearing officer asked the parties to submit briefs regarding his authority to declare a default based on Dr. Mileikowsky's actions in the following areas: failure to produce documents; failure to prepare an exhibit list and set of exhibits; failure to submit a written statement concerning the peer review allegations; and repeated disruption of hearing sessions by violating orders concerning questioning of witnesses and repeated references to the lawsuits he had filed, [¶] On January 3, 2002, the hearing officer issued a written ruling stating that Dr. Mileikowsky had `acted to disrupt the orderly conduct of [the] hearing on a number of occasions' by refusing `to comply with [the hearing officer's] Rulings regarding the examination of witnesses and the introduction of evidence'; engaging in `noisy yelling at hearing sessions' on September 5, November 29, and December 17, 2001; and making statements containing `invective and personal attacks directed towards witnesses' and others. The hearing officer ruled that further questioning of witnesses on Dr. Mileikowsky's behalf be done by his assistants or representatives, that the hearings be videotaped, and that a security officer be present in the hearing room. He stated that `[t]he hearing sessions shall not reconvene until Dr. Mileikowsky responds in writing that he will comply with my rulings regarding the conduct of this hearing, including specifically the rules set forth in this Ruling.'" (Tenet Healthsystem, supra, 128 Cal.App.4th at p. 549, 27 Cal. Rptr.3d 171.)
[17] By this we mean ensuring that the record accurately reflects the conduct that merits termination, ensuring that the party engaging in that conduct is fully on notice of the impending termination and is given full and complete opportunity to rectify its (misconduct before the hearing is actually terminated.
[**] See footnote *, ante.